Richard Glenn ALDER,
Plaintiff–Appellant,

v.

MID–SOUTH BEVERAGES, INC.,
Mid–South Bottling Company,
Defendant–Appellee.

Supreme Court of Tennessee,
at Jackson.

Jan. 16, 1990.

Tony Seaton, Johnson City, Gregory Gallagher, Memphis, for plaintiff-appellant.

Henry T.V. Miller, McDonald, Kuhn, Smith, Miller & Tait, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Chief Justice.

In this workers' compensation case, Plaintiff, a route salesman for Mid–South Bottling Company, appeals from the trial court's judgment denying him benefits for a gunshot injury. The sole issue presented on this appeal is whether the trial court erred in its finding that Plaintiff's injury did not arise out of and in the course of his employment. For the reasons that follow, we affirm the judgment of the trial court.

Plaintiff, Richard Alder, was a 22–year-old employee of Mid–South Bottling Company (a Pepsi–Cola distributor) in Memphis in the early part of 1986. He and a co-employee, Steve Bius, drove a company-furnished pick-up truck to three large Memphis grocery stores, where their job duties included setting up displays and keeping the stores stocked with drinks that had previously been delivered to the storeroom by large Pepsi delivery trucks. Co-employee Bius worked with Plaintiff and although Plaintiff normally drove the truck, neither man had management authority over the other.

Early on the morning of February 10, 1986, as Plaintiff and Bius drove into a Kroger supermarket parking lot to begin their work day, they saw two young men suspiciously walking near the back of the store close to several eighteen-wheel tractor-trailer delivery trucks. Plaintiff and Bius followed the two men and saw them leave in a four-door Chevrolet Impala. Plaintiff and Bius then worked the Kroger store and left for another store in a different location.

Plaintiff and co-employee Bius returned to the Kroger store to re-stock it later that same day. After working the store they ate lunch outside in the Kroger parking lot next to their pick-up truck. Plaintiff and Bius testified that there were no policies or procedures regarding the time or location for eating lunch while working for Mid–South other than the fact that they were told to stay in the immediate area while eating.

After lunch, Plaintiff and Bius were preparing to get into their pick-up truck when they were approached by two young men. One of the youths asked Bius for change for a dollar. When Bius replied he had no change, the youth pulled out a gun, held it to Bius' head, and asked for everything Bius had. The other teenager yanked a personal beeper from Bius' belt and ran off toward a vacant field adjoining Kroger's parking lot, and Plaintiff ran after him in pursuit.

The first assailant, who was still standing at the truck with the gun, shot at Plaintiff, and Plaintiff ducked between two cars in order to avoid the gunfire. At that point, the assailant holding the gun shot at Bius and then fled in the same direction as his companion. Both assailants appeared to run toward the apartment complex across the vacant field, although neither was seen crossing into the complex.

Plaintiff came out from between the parked cars and rejoined co-employee Bius at the company pick-up truck. Neither Plaintiff nor Bius was injured at this time.

Plaintiff and Bius believed the assailants were the same two young men they had seen earlier that morning behind Kroger's. Bius suggested that they get the license number of the car they had seen the teenagers in that morning. After yelling out to

someone in the parking lot to call the police, Bius and Plaintiff left in the company pick-up to look for the assailants' car.

Bius drove the pick-up to the apartment complex about one-fourth to one-half mile away and turned into the complex's narrow driveway to turn around. As Bius turned into the driveway, he surprised the assailants in their Impala on their way out of the driveway. Bius' and Plaintiff's pick-up and the assailants' car were blocking each other so that neither vehicle could go forward.

One of the assailants jumped out of the Impala, and Bius jumped out of the pick-up and chased the assailant until Bius heard a shot "and realized what I was doing." The assailants' car then backed out, and the armed assailant shot two or three more times at Bius as the Impala was backing out.

Bius returned to the pick-up truck to find Plaintiff lying down on the pavement directly in front of the truck bleeding from the head. Plaintiff had been shot above his left eyebrow. Plaintiff testified he has no memory of what happened after Bius left the truck, and only remembers waking up from a coma in the hospital approximately two months later.

Plaintiff was severely disabled as a result of the gunshot wound. His left arm was left functionless, and his walking was impaired so that he can now walk only with the use of a brace and a quadriposey cane. He lost the vision in his left eye and the ability to use the left frontal part of his brain. As a result of his brain surgery Plaintiff was left without certain thought processes, emotional feelings, and drives. He had to be taught how to swallow and eat, to move his extremities, to speak, to communicate, and to socially behave. His memory, cognition, thinking processes and behavioral processes had to be relearned.

Based upon AMA Guidelines, Plaintiff's doctor rated him as having an 87% permanent disability to the body as a whole. It was admitted and stipulated that Plaintiff's condition has rendered him permanently and totally disabled under the workers' compensation laws.

After a trial, the judge found that Plaintiff had abandoned his master's business and gone beyond the scope of his employment when he was shot, so that Plaintiff's injury did not arise out of or in the course of Plaintiff's employment. Plaintiff appeals. The single issue presented for review is whether Plaintiff's injury arose out of and in the course of his employment. Our review is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *Humphrey v. Witherspoon*, 734 S.W.2d 315 (Tenn.1987).

The phrase "arising out of" refers to the origin of the injury, while the phrase "in the course of" refers to the time, place, and circumstances of the injury; and the injury received must not only arise out of the Plaintiff's employment but also occur in the course of his employment. *Knox v. Batson*, 217 Tenn. 620, 399 S.W.2d 765, 770 (1966). Plaintiff asserts that the injury occurred in the course and scope of his employment because the assault occurred immediately after lunch, and Plaintiff was furthering and facilitating his employer's business by eating lunch on the Kroger property. Plaintiff maintains that the holding in *Hudson* compels such a result.

In *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 599 (Tenn.1979), the Court noted that "generally, injuries received during a lunch or dinner break and while the employee is off the premises are not compensable" under Tennessee Workers' Compensation laws, but that "injuries that occur while an employee is further or facilitating his employer's business are included in the course of his employment." *Id.* at 599.

*Hudson* involved a truck driver who delivered freight for his defendant employer. After completing one mission for his employer the plaintiff was told to get his lunch and be at another customer's location within a short period of time. It was expected that the drivers would take into consideration the convenience of the employer and its customers in selecting a

place to eat lunch. Hudson stopped at a fast-food chicken restaurant, obtained an order to go, and was climbing into his truck's cab when he was shot by two or three unknown assailants. The motivation for the assault was unknown. The Court noted that Hudson was at a place selected for the convenience of his employer and its customers and that his actions were facilitating and furthering his employer's business. On the basis of these findings, the Court held that the trial court was correct in holding that the plaintiff's injury occurred in the course of his employment. *Hudson,* 583 S.W.2d at 599.

The Court in *Hudson* then turned to the question of whether the injury arose out of the employment. The Court adopted the street risk rule in holding that the assault did arise out of the plaintiff's employment because the danger or risk of assault was inherent in a truck driver's employment. *Hudson,* 583 S.W.2d at 602. The *Hudson* Court also appeared to partially base its holding on the fact that the plaintiff was visibly identified as the custodian of his employer's property. *Id.* at 603.

■ Plaintiff Alder and co-employee Bius were visibly identifiable as the custodians of their employer's property in the case at bar. While Plaintiff and Bius carried no money or soft drinks, they drove a company-owned pick-up truck. Just as the *Hudson* court recognized that the risk of assault is inherent in the job of truck driver, we recognize that the risk of assault or robbery was an inherent part of Plaintiff's employment as route salesmen for a Pepsi distributor. Plaintiff is also correct in asserting that, as the plaintiff in *Hudson* was furthering his employer's business by eating at the fast-food restaurant, Plaintiff and Bius were furthering their employer's business by eating lunch in the Kroger parking lot. There is no question but that the initial assault on the Kroger parking lot occurred within the course of and arose out of Plaintiff's employment.

However, Plaintiff was not injured during the first assault. His injuries occurred later, at the apartment complex, after Plaintiff and Bius made the decision to leave the Kroger parking lot to go searching for the assailants' car. The initial assault was over and ended and neither employee was injured at the time Plaintiff and Bius decided to look for the assailants' car.

When Plaintiff and Bius got into their truck and left in search of the assailants' car, they were no longer acting in the course of their employment. The proof showed that the assailants stole nothing of Defendant's during the initial assault. The only thing stolen was Bius' personal beeper, which was unconnected with the employment. Therefore, Plaintiff and Bius were not trying to recover any of Defendant's property when they went in search of assailants' car, and the unexpected encounter at the apartment complex that resulted in Plaintiff's unfortunate injuries did not occur within the course of nor arise out of Plaintiff's employment.

■ Plaintiff argued during oral argument that public policy considerations compel us to decide that Plaintiff's injury arose out of and in the course of his employment. Plaintiff argued that there is a public policy in Tennessee that "all citizens should assist the police" in the apprehension of criminals. It may be public policy for citizens to make *reasonable* efforts to help the police, such as describing assailants or their vehicles. We reject, however, any suggestion that unarmed private citizens are under any kind of duty to search down armed assailants or armed assailants' getaway cars.

We do not find that the evidence preponderates against the findings of the trial judge and his judgment is accordingly affirmed. The costs are adjudged against the Appellant.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.