Gene **BRADEN, Plaintiff–Appellant,**

v.

**SEARS, ROEBUCK AND COMPANY and Allstate Insurance Company, Defendants–Appellees.**

Supreme Court of Tennessee, at Jackson.

June 29, 1992.

Frank Deslauriers, Covington, Dan Norwood, Memphis, for plaintiff-appellant.

John D. Richardson, Deborah P. Ford, The Richardson Law Firm, Memphis, for defendants-appellees.

## OPINION

DROWOTA, Justice.

This case presents an appeal by the Plaintiff-employee of the trial court's dismissal of his suit for workers' compensation benefits. The issue presented is whether the injuries Plaintiff sustained as a result of an assault arose out of his employment. Finding they did, we reverse.

Plaintiff Gene Braden was employed by Defendant Sears, Roebuck and Company as an "outside television technician" at the time of his injuries. In his capacity as a technician, he made service calls to customers' homes using a service van furnished by Sears. He was 61 years old at trial, and had been employed by Sears for 32 years.

In 1988, Sears instituted a new system whereby service technicians did not report daily to the service center; instead, technicians drove their vans home in the evening and reported directly to a customer's home the following morning. The technicians were responsible for washing the vans and ensuring they were locked and secured.

Under the so-called "drop system," each evening a Sears route person would deliver the next day's assignments to the technician by placing a "route sheet" into a bucket in the service van. At the same time, the route person would remove parts or appliances that were to be repaired at the service center. The route person also collected from the van the technician's money envelope, into which the technician was to have placed cash and checks received from that day's customers.

At some point before beginning work, the technicians were required to retrieve the route slip from their vans and organize that day's route. This organization included sequencing the service calls to minimize backtracking, and ensuring they had proper service orders and parts. Policy required reporting route sequence information to the service center by 9:15 a.m. each work day.

Sears's written procedures did not prescribe a specific time for technicians to organize their routes. Conflicting testimony was given by two Sears service managers: one manager assumed the organizing would be done in the morning; the other assumed the individual technician could decide the best time. The managers did agree, however, that the route organization was a job requirement and that a major purpose of this new route system was to enable Sears to provide more efficient service to its customers.

At approximately 8:00 p.m. on February 1, 1989, Plaintiff, still wearing his Sears uniform, went to his driveway to retrieve the next day's route slip from the back of

the Sears van. This was in accordance with Plaintiff's habit of organizing his route the prior evening. During the course of this retrieval, Plaintiff was attacked and pistol-whipped by an unknown assailant. The attacker took $20.00 of Plaintiff's personal money from Plaintiff's shirt pocket but took nothing from the van. However, the route person had already removed that day's money envelope from the van.

Plaintiff received emergency medical treatment for the initial severe head injury and has subsequently been examined and treated by various physicians for blurred vision, dizziness, memory loss, headaches, and numbness. He has not worked since the attack; one doctor opined that, given Plaintiff's age and disabilities, he probably will never work again.

The trial court dismissed Plaintiff's suit for workers' compensation benefits, finding his injuries did not arise out of the employment with Sears. We disagree and reverse.

### I.

This Court's standard of review in workers' compensation cases is *de novo* upon the record, accompanied by a presumption of the correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e)(2) (1991). However, no presumption operates with respect to the trial court's application of law. Here, while our independent examination reveals no basis upon which to disturb the trial court's factual findings, we must nevertheless conclude that the court below erred in its application of the law.

◼ In order for an injury to be compensable under Tennessee Workers' Compensation Law, it must be "by accident arising out of and in the course of employment." *See* T.C.A. § 50–6–102(a)(5) (1991). The phrase "in the course of" refers to the time and place. *See e.g., Travelers Ins. Co. v. Googe,* 217 Tenn. 272, 279, 397 S.W.2d 368, 371 (1965). Accordingly, "[i]njuries that occur while an employee is furthering or facilitating his employer's business are incurred in the course of his employment."

*Hudson v. Thurston Motor Lines, Inc.,* 583 S.W.2d 597, 599 (Tenn.1979) (citing 1 Larson, Workmen's Compensation Law §§ 14, 15.50 (1978)). Here, the trial court correctly determined that, because Plaintiff was attacked while engaged in removing his route sheet from the back of the van, an activity that furthered his employer's business, his injuries were sustained in the course of his employment.

We note Defendant's insistence that the attack occurred (1) at a *time* when Plaintiff was not "on the clock" and (2) at a *place*, his home, removed from the work environs. Under the present circumstances, these facts do not remove Plaintiff's activities from the course of his employment. Sears's policy mandated that technicians organize their routes at home, "on their own time," prior to embarking on the day's first service call. There was no showing Plaintiff attempted to perform his duties in a manner that contravened either company policy or his specific instructions. Therefore, Plaintiff must be held to have been acting in the course of his employment.

### II.

◼ The phrase "arising out of" refers to causation. This requirement is satisfied if an injury has a rational, causal connection to the work. *See, e.g., Beck v. State,* 779 S.W.2d 367, 371 (Tenn.1989) (citing cases). Further, any reasonable doubt as to whether an injury arose out of the employment is to be resolved in favor of the employee. *Id.*

In *Hudson v. Thurston Motor Lines, supra,* this Court expressly approved of the "street risk doctrine." This doctrine applies where the employment exposes an employee to the hazards of the street, and may be used to establish the requisite causal connection between these hazards and the employment. *See Hudson,* 583 S.W.2d at 602.

◼ In some cases, the street risk doctrine has been applied to afford recovery to an employee injured as a result of this "indiscriminate exposure to the general public" while engaged in actual perform-

ance of work duties. *See Beck,* 779 S.W.2d 367, 371 (employee driver's license examiner assaulted on employer's premises while performing employment duties; street risk doctrine applied though not mentioned by name); *Jesse v. Savings Products,* 772 S.W.2d 425 (Tenn.1989) (employee convenience store clerk raped by customer). In others, including the seminal *Hudson* case, the doctrine afforded the requisite causal connection even though the employee was not at the time performing traditional work duties. *See Bell v. Kelso Oil Co.,* 597 S.W.2d 731 (Tenn.1980) (employee assaulted in parking lot outside company seminar); *Hudson,* 583 S.W.2d 597 (employee truck driver assaulted at fast-food restaurant while entering his company truck with his lunch); *see also Alder v. Mid–South Beverages, Inc.,* 783 S.W.2d 544 (Tenn.1990) (initial assault against employee soft-drink salesman while lunching next to company pickup truck arose out of employment). However, in each case where the employee was injured while not performing traditional work duties, we carefully noted circumstances that established the required nexus between the particular street risk and the employment. In *Bell,* the assailant was motivated to attack the employee precisely because he worked for a particular employer. In both *Hudson* and *Alder,* the employees' visible identification with their employers, and their responsibilities as custodians of their employers' property, were significant. In sum, while we approve of the street risk doctrine as an aid to evaluating the causal relationship between certain injuries and employment, we caution that "each case must be decided with respect to its own attendant circumstances and not by resort to some formula." *Bell,* 597 S.W.2d at 734.

The trial court dismissed Plaintiff's suit for workers' compensation benefits on the ground Plaintiff did not prove the assailant's motive arose out of the nature of Plaintiff's employment. In so doing, the trial court erred. "[M]otive of the assailant is only one of the circumstances to be considered in determining whether the injury arises out of the employment, and its weight depends on the strength of other inferences raised by the proof." *Jesse,* 772 S.W.2d at 427.

The correct focus in assault cases involves a consideration of the risks and dangers inherent in the employment. An employee need only show that an assault has a rational, causal connection to the employment in order to establish the injury arose out of the employment. To establish this causal connection, workers whose employment exposes them to the hazards of the street, or who are assaulted under circumstances that fairly suggest they were singled out for attack because of their association with their employer, are entitled to establish this causal connection with the aid of the street risk doctrine.

■ The facts here demonstrate Plaintiff was assaulted while engaged in the duties of his employment, and at a time when he was visibly identified as a Sears employee and charged with the responsibility of protecting Sears's property. The record established that, throughout the week, money and valuables were removed from Plaintiff's service van on a nightly basis. It is therefore reasonable to conclude Plaintiff was targeted for attack because of his association with Sears, and in the hope that this association would sweeten the fruits of the crime. Under these circumstances, the street risk doctrine applies and the causal connection between Plaintiff's injury and employment is established.

Accordingly, the judgment of the trial court is reversed, and the case remanded for a determination of the benefits due Plaintiff.

■ We note in passing that when a trial court has heard the medical proof but intends to rule in the employer's favor on a ground, as here, precluding all recovery, the court should also make contingent findings concerning the extent the employee would otherwise be entitled to recover. *See Jones v. Helena Truck Lines, Inc.,* 833 S.W.2d 62, 65 (Tenn.1992). By so doing, the necessity for a remand is obviated in the event this Court strikes the employer's defense.

Costs of this appeal are taxed to Defendants.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.