

FILED

January 28, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Michael Weiland**

**EMPLOYER: Fedex Express Co.**

**DOCKET #: 2014-08-0020**
**STATE FILE #: 64544-2014**
**DATE OF INJURY: August 1, 2014**

**INSURANCE CARRIER/TPA: Sedgwick CMS**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Employee, Michael Weiland (Mr. Weiland).

Mr. Weiland filed a Request for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, on September 29, 2014, pursuant to Tennessee Code Annotated section 50-6-239 to determine whether the provision of medical benefits and/or temporary disability benefits is appropriate. Employee requested an evidentiary hearing.

The Court conducted a telephonic hearing beginning on January 15, 2015, and reconvening on January 22, 2015. Mr. Weiland appeared *pro se*. Attorney Jonathan May represented Fedex Express Co. (Fedex) and its TPA, Sedgwick CMS. Considering the positions of the parties, the applicable law and all of the evidence submitted, the Court hereby finds that Employee is not entitled to medical benefits or temporary disability benefits.

### ANALYSIS

#### Issues

1. *Whether Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer.*

2. *Whether Employer is obligated to provide medical benefits and/or temporary disability benefits.*

1

**Evidence Submitted**

The Court received and considered the following documentation and information submitted by the parties. The Court marked Exhibits 1, 2, 12, 18, 19 and 20 for identification only. The Court admitted the remaining exhibits into evidence without objection.

1. Dispute Certification Notice (DCN), dated October 28, 2014
2. Petition for Benefit Determination (PBD), filed September 29, 2014
3. First Report of Injury (FROI) (electronic submission to TDOL)
4. Document entitled "Trip Recap"
5. Medical Record-Mayo Clinic in Arizona dated August 12, 2014
6. Medical Record-Mayo Clinic Hospital-Emergency Department Discharge Instructions dated August 6, 2014
7. Medical Record-Mayo Clinic in Arizona-Emergency Department dated August 6, 2014
8. Medical Record-Mayo Clinic in Arizona-Emergency Department-Addendum dated August 6, 20114
9. Document entitled "Regular Sick Account-Michael Weiland"
10. Document entitled "Monthly Calendar, July 2014, Michael Weiland"
11. Document entitled "Monthly Calendar, August 2014, Michael Weiland"
12. Sedgwick letter dated October 20, 2014 describing reason for denial
13. First Report of Injury (FROI)(initial typed version)
14. Document entitled "Additional Information Reported" attached to Exhibit 13
15. Wage Statement
16. Notice of Denial (C-23)
17. Sedgwick Claim Notes
18. Mayo Clinic Influenza information from internet
19. Influenza B information from internet
20. Request for Expedited Hearing filed December 4, 2014

**History of Claim**

Mr. Weiland works as a pilot for Fedex. According to his PBD, he "was flying around China and contracted A-H3 (swine flu)." Only Mr. Weiland testified at the hearing. He testified that he believed that he had contracted bird flu which he believes to be an illness unique to China. Mr. Weiland obtained medical treatment from Mayo Clinic in Arizona following his return to the United States. He filed a claim for worker's compensation benefits. Fedex denied the claim.

The August 6, 2014, medical report from the Mayo Clinic in Arizona (Exhibits 7 and 8) noted that Mr. Weiland had visited China for two weeks and returned to Arizona on August 2, 2014. The following is a summary of that report. He developed symptoms of throat pain and cough on July 30, 2014, when he was still in China. After returning to Arizona, his symptoms worsened. He is taking Ciprofloxacin and has now developed diarrhea and gastro-intestinal upset. He denied contact with any animals or birds while in China, and denied eating any rare or raw meat or seafood. The diagnosis was Influenza A. Mr. Weiland requested that he be tested for bird flu (avian flu). The

2

clinic advised that they do not test for bird flu, but that they would send a nasopharyngeal swab to the Arizona State Health Department for testing. It was noted that Mr. Weiland's symptoms had improved. He was discharged from the clinic and prescribed Tamiflu. The discharge instructions (Exhibit 6) listed a diagnosis of resolving acute influenza.

Mr. Weiland returned to Mayo Clinic in Arizona on August 12, 2014 (Exhibit 5). He reported persistant, non-improving symptoms after the flu. It was noted that he has tested positive for Influenza A and positive for Influenza AH3. Mr. Weiland submitted no other medical records or medical evidence.

No medical records or expert medical evidence were submitted establishing a causal connection between Mr. Weiland's illness and his employment. Likewise, there was no medical evidence provided that Mr. Weiland had contracted a strain of influenza that was unique to China. No results of testing for bird flu were submitted.

The parties stipulated that Mr. Weiland's compensation rate is the maximum benefit.

### Employee's Contentions

Mr. Weiland stated his main purpose in this claim is to bring awareness to Fedex of the problem pilots face in exposure to disease in third world countries. Fedex pilots routinely fly into airports throughout the world where there is a higher risk of exposure to diseases such as bird flu, tuberculosis, hepatitis, and even ebola. There is a great difference in the common diseases that one would get in everyday life in the United States, and the diseases one gets from being on a Fedex trip to a third world country.

Fedex pilots are exposed to workers in these countries that clean airplanes and prepare food, thereby exposing the pilots to illnesses they would not get in any capacity other than their employment as a Fedex pilot. Pilots are not inoculated against nor protected against these diseases. As a result, Fedex pilots are at risk of serious illness as a result of their employment.

Regarding this case, Mr. Weiland contends that he contracted an illness (bird flu or swine flu) that arose primarily out of and in the course and scope of employment with Fedex on his trip to China. He contends that Fedex should provide him medical and temporary disability benefits.

### Employer's Contentions

Fedex disputes the compensability of Employee's iillness on the basis that it did not arise primarily out of and in the course and scope of employment with Employer.

### Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving

3

party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003) and Tenn. Code Ann. sec. 50-6-238 (2012). The employee bears the "burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c)(6) (2014).

*Factual Findings*

Considering all admissible evidence, including the testimony of Employee, the Court finds that Mr. Weiland works as a pilot for Fedex. His work required him to take an extended trip to China lasting approximately two weeks. Mr. Weiland was ill upon his return to the United States and was diagnosed with influenza. No physician has opined that Employee's illness arose primarily out of and in the course and scope of employment with Fedex.

*Application of Law to Facts*

1. *Employee failed to prove that he sustained an injury that arose primarily out of and in the course and scope of employment with Employer.*

In *Excel Polymers, LLC v. Broyles,* 302 S.W.3d 268, 274 (Tenn. 2009), the Tennessee Supreme Court reviewed the standard to be applied in evaluating evidence concerning the issue of causation in workers' compensation cases: Generally speaking, a workers' compensation claimant must establish by expert medical evidence the causal relationship between the alleged injury and the claimant's employment activity, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)). The claimant must establish causation by the preponderance of the expert medical testimony, as supplemented by the evidence of lay witnesses. *Id.* This case is not obvious, simple and routine. It is, therefore, required that Employee establish causation by expert medical evidence.

Tennessee Code Annotated section 50-6-102(13)(2014) defines injuries, including occupational diseases, as follows:

> **(13)** "Injury" and "personal injury" mean an injury by accident, a mental injury, occupational disease including diseases of the heart, lung and hypertension, or cumulative trauma conditions including hearing loss, carpal tunnel syndrome or any other repetitive motion conditions, arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that:

> > **(A)** An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of

4

and in the course and scope of employment;

**(B)** An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;

**(C)** An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes;

**(D)** "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility ...

Courts have held that the statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

In contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, the element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992). The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Blankenship*, 164 S.W.3d at 354. Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.*, 270 S.W.2d 389, 390 (Tenn. 1954).

Applying these principles to this case, this Court finds that Mr. Weiland has failed to establish by expert medical evidence that his illness arose primarily out of and occurred in the course and scope of his employment. No medical doctor has reported that there was a causal connection between the conditions under which Employee worked and the illness he contracted. Therefore, Employee has submitted insufficient evidence to establish that his alleged injuries arose primarily out of his employment.

5

2. *Employer is not obligated to provide medical or temporary disability benefits.*

Mr. Weiland has failed to prove that he sustained a compensable work-related injury or illness. Therefore, Fedex is not responsible for providing medical or temporary disability benefits.

**IT IS, THEREFORE, ORDERED THAT:**

1) Employee's interlocutory request in this Expedited Hearing for medical and temporary disability benefits is denied at this time on the grounds that Employee has failed to prove by a preponderance of the evidence that he sustained an injury by accident arising primarily out of and in the course and scope of employment. This is not a Final Order.

2) This matter is set for Initial Hearing on March 26, 2015, at 9:00 a.m. central standard time.

**ENTERED this the 28th day of January, 2015.**

**Jim Umsted, Judge**
**Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Request for Appeal, you must:

1. Complete the enclosed form entitled: "Request for Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the

Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 28th day of January, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Michael Weiland, Employee | x | | | | x | unionpilot@yahoo.com |
| Jonathan May, Employer's attorney | | | | | x | jmay@lewisthomason.com |

_Penny Shrum_