FILED

**May 11, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 11:27 AM**



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Laura Campbell**

**EMPLOYER: Mid-South Waffles, Inc., d/b/a
Waffle House**

**INSURANCE CARRIER: Brentwood Services**

**DOCKET #: 2014-06-0070**
**STATE FILE #: 61906-2014**
**DATE OF INJURY: August 2, 2014**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on April 8, 2015, upon the Request for Expedited Hearing filed by Employee, Laura Campbell, on March 9, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if it is appropriate that Employer, Mid-South Waffles, Inc., d/b/a Waffle House ("Waffle House"), provide additional medical benefits.

Attorney Charles Hicks represents Ms. Campbell. Attorney Sarah Reisner represents Waffle House. Upon review of Ms. Campbell's request, the technical record and the evidence presented at the Expedited Hearing, the following order grants Ms. Campbell's request for medical benefits for the reasons set forth below.

### ANALYSIS

#### Issues

1. Whether Ms. Campbell sustained an injury arising primarily out of and in the course and scope of employment with Waffle House.

2. Whether Waffle House is obligated to provide additional medical benefits.

#### Evidence Submitted

The Court admitted the following into evidence:

Exh. 1-Medical records of Laura Campbell from Daniel Adkisson, PA-C, Dr. Demond White and Dr. Salyer of Dickson Medical Associates
Exh. 2-Affidavit of Teresa Grimm, March 15, 2015
Exh. 3-Affidavit of Valerie Mackens, December 18, 2014

1

Exh. 4-First Report of Injury, August 8, 2014
Exh. 5-Letter from Leigh Purucker dated September 9, 2014 (for identification purposes only)
Exh. 6-Notice of Denial of Claim for Compensation, September 9, 2014
Exh. 7-Drug test results.

The following witnesses testified at the hearing:

- Laura Campbell
- Teresa Grimm.

The technical record consists of the following:

- Petition for Benefit Determination, November 26, 2014;
- Dispute Certification Notice, filed November 24, 2014; and,
- Request for Expedited Hearing, March 9, 2015.

The Court considered any factual statements contained within the pleadings and attachments to them as allegations unless established by the evidence.

## History of Claim

Ms. Campbell worked as a server at the Waffle House in Dickson, Tennessee. She testified that, on August 2, 2014, a manager trainee was restocking the "low bar" with condiments while she delivered food. While restocking the condiments, a bottle of Tabasco sauce fell to the floor and shattered. Ms. Campbell stated her foot "slipped, slid, and gripped" in the spilled sauce.

Ms. Campbell's co-worker, Teresa Grimm, witnessed the accident. Ms. Grimm testified that "Ramona…was putting the stock up and when she did put it on the shelf, it broke. And as it broke—we work in small area—Laura was [sic] had her back turned. It fell. Laura turned around. I looked for a towel. I went to grab a towel and at the same time, she slipped in it and her knee, well her leg, I'll say her leg, twisted and she went to go down. And I went to see, make sure she didn't fall, and we put a towel over it after she got out of it."

Ms. Campbell testified that she reported the incident to Chris Tucker, the district manager, and told him that her knee hurt. Ms. Grimm verified that Ms. Campbell had a conversation with Mr. Tucker concerning the incident.

Ms. Campbell further testified that she told the store manager, Tina Richardson, about the accident on the following day. She told Ms. Richardson that her knee was swollen and hurting. Ms. Campbell stated that she called Ms. Richardson again the following morning, August 4, 2014, and told her that she needed to see a doctor. When Ms. Richardson did not offer to send Ms. Campbell to a doctor, Ms. Campbell told Ms. Richardson that she would be going to see her own doctor.

2

That same day, Ms. Campbell visited her primary care provider, physician assistant Daniel Adkisson, to seek treatment for her knee. Mr. Campbell testified that PA Adkisson told her that "something was wrong with her ACL." His treatment notes, which are difficult to decipher, appear to say that she presented for "pain management" and a "knee injury" and further state, "Recent fall at work, slipped on floor this past weekend." He diagnosed "knee strain and instability." PA Adkisson told Ms. Campbell to get a brace for her knee.

At some point after visiting PA Adkisson, Ms. Campbell testified that a person named "Silver," who worked in the human resources for Waffle House, called and told her to see Dr. John Salyer.

Ms. Campbell saw Dr. Salyer on August 12, 2014. The "history" portion of notes from that visit state the pain onset was sudden, and, "Trauma type slipped, (sic.) occurred at work, 1 Week 3 Days ago on 8/2/2104." X-rays performed that same day found "no evidence of acute injury," and, "[n]ormal appearance of left knee." He diagnosed her with acute knee pain. Dr. Salyer additionally wrote the following in a letter: "Laura Campbell is currently under my medical care and may return to work at this time. She may return to work on August 13. Due to the persistent pain in[]her let [sic] knee, she needs to have and [sic] MRI of her left knee. Please relay this information to Workers Comp carrier so that they can schedule this." (Exh. 1).

Ms. Campbell testified that Mr. Tucker instructed her to bring him the records from her visit with Dr. Salyer. Mr. Tucker was not at the restaurant so she left the records with Ms. Grimm who put them in the "drop box" so that Mr. Tucker would find them when he "changed the drawer" later in the day. Ms. Campbell testified that she heard nothing else about getting an MRI from her supervisors at Waffle House and still has not received an MRI.

On September 9, 2014, Brentwood Services, the TPA for Waffle House, issued a form C-23, "Notice of Denial of Claim for Compensation," stating that "the claim did not arise out of or in the course of employment" as the basis for denial. (Exh. 6).

She received no further treatment through workers' compensation. She did visit PA Adkisson again who gave her medicine to control the swelling in her knee. Ms. Campbell testified that she attempted to get an MRI by using her private medical insurance but her medical insurance refused to pay for the MRI because the injury occurred at work.

Ms. Campbell testified that she had no prior left knee problems since having stitches in her knee as a child. However, another co-worker, Valerie Mackens, indicated that Ms. Campbell's knee pain pre-existed the date of injury (Exh. 3). In her sworn affidavit, dated December 19, 2014, Ms. Mackens stated that:

> On the morning of August 1, 2014, at approximately 8:00 a.m., Laura Campbell told me that her left knee was hurting. She stated that she did not know why and mentioned that she might have slept on it wrong. She complained about this left knee pain at least three (3) times that day.

3

When asked about Ms. Mackens' statement, Ms. Campbell denied that she had told Ms. Mackens that she had knee problems prior to August 2, 2014. Ms. Grimm testified that Ms. Campbell had not complained to her about problems with her knee.

Concerning the current condition of her knee, Ms. Campbell testified that "it hurts, it throbs, it's not solid." When asked whether her knee affected her ability to work, Ms. Campbell testified that "it hurts, but I have to work."

## Ms. Campbell's Contentions

Ms. Campbell asserts she sustained an injury arising primarily out of and in the course and scope of employment with Waffle House when she slipped in Tabasco sauce, twisting her left knee. She seeks additional medical benefits and including continuing her treatment with Dr. Salyer. In particular, she requests that the Court order Waffle House to pay for the MRI that Dr. Salyer ordered.

## Waffle House's Contentions

Waffle House contends that Ms. Campbell failed to meet her burden of proof to show that she sustained an injury arising primarily out of and in the course and scope of her employment. Because the claim is not compensable, it is no longer obligated to provide additional medical benefits.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. However, at the interlocutory, Expedited Hearing phase, the employee need not prove each and every element of his or her claim by a preponderance of the evidence to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1). *McCord v. Advantage Human Resourcing,* No. 79894-2014 (Tenn. Work. Comp. App. Bd., March 27, 2015). The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). The workers' compensation law shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor the employer. Tenn. Code Ann. § 50-6-116 (2014).

### Factual Findings

The Court finds that Ms. Campbell slipped in Tabasco sauce while working at Waffle

House on August 2, 2014, and suffered an injury to her left knee. The Court finds that Ms. Campbell timely reported the accident and her injury to both the district manager, Chris Tucker, and the store manager, Tina Richardson. The Court finds that Waffle House did not provide Ms. Campbell a panel of physicians when it first learned of the accident but did schedule an appointment for Ms. Campbell with Dr. John Salyer. The Court finds that Ms. Campbell rightfully sought care from her primary care provider when Waffle House failed to provide medical care upon learning of the accident. The Court finds that Dr. Salyer examined Ms. Campbell and determined that she needed an MRI of her left knee. The Court finds that, despite not being offered a panel, Ms. Campbell is pleased with the treatment provided by Dr. Salyer and he shall serve as the authorized treating physician.

*Application of Law to Facts*

The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). In contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, the element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992).

Here, Ms. Campbell testified that she hurt her knee when she slipped in Tabasco sauce while serving food at Waffle House on August 2, 2014. Ms. Grimm affirmed Ms. Campbell's testimony. Furthermore, Ms. Campbell timely reported her injury to her supervisors. Although, Ms. Mackens provided an affidavit stating that Ms. Campbell complained of knee pain on August 2, 2014, Ms. Campbell denied making those statements and, even if she did complain of knee pain, her complaints of pain would not render her claim noncompensable, as the August 2, 2014 incident could have aggravated a pre-existing condition. In any event, the Court finds that Ms. Campbell has shown a likelihood of success on the merits at a compensation hearing and has, therefore, carried her burden of proof in these proceedings.

The statute provides that the employer shall furnish, free of charge to the employee, such medical treatment made reasonably necessary by the accident. Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). The law further states, "the employer shall designate a group of three (3) or more independent reputable physicians … from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A) (2014). Further, "any treatment recommended by a physician… selected pursuant to this subdivision (a)(3)… shall be presumed medically necessary for treatment of the injured employee." Tenn. Code Ann. § 50-6-204(a)(3)(H) (2014).

Dr. Salyer has recommended that Ms. Campbell undergo an MRI. The Court finds his recommendation reasonable and necessary. Accordingly, Waffle House shall pay the cost of the MRI and further treatment recommended by Dr. Salyer.

In addition to this finding, the Court also finds that Brentwood Services' actions in this case warrant investigation into whether the Division of Workers' Compensation should assess a civil penalty. The Division may assess a civil penalty of between fifty and five-thousand dollars ($50-$5,000) against any person or entity that "denied or stopped paying benefits for a claim of temporary disability or medical benefits without first performing a reasonable investigation." Tenn. Comp. R. & Regs. 0800-02-24-.05(1)(c). Any Division employee may refer cases for a civil penalty investigation whenever the employee "…believes that there may have been a violation of the Division's rules or the Tennessee Workers' Compensation Act." *Id*. at 0800-02-24-.03. The Court believes that such a violation may have occurred.

An x-ray or Ms. Campbell's knee found "no evidence of acute injury," and, "[n]ormal appearance of left knee." Despite the x-ray results, Dr. Salyer, the authorized treating physician, still recommended that Ms. Campbell undergo an MRI due to the persistent pain in her left knee and even drafted a letter, dated August 12, 2014, which stated "please relay this information to Workers Comp carrier so that they can schedule this." Brentwood Services issued a notice of denial on September 9, 2014, despite the letter from Dr. Salyer recommending an MRI.

At the hearing, Brentwood Services pointed to the x-ray results and the affidavit of Valerie Mackens in support of the decision to deny Ms. Campbell's claim. In the opinion of the Court these pieces of evidence provided insufficient reason to abruptly terminate her care. First, an x-ray would not reveal any possible soft-tissue or ligament damage and Dr. Salyer knew the x-ray results when he ordered the MRI. Second, Brentwood Services could not have considered Ms. Mackens' affidavit as a basis to deny the claim because she did not complete it until December 18, 2014—more than three months after Brentwood Services issued the denial notice.

Based on the evidence presented, the Court believes that Brentwood Services may have violated rule 0800-02-24-.05(1)(c) and refers this case to the Division's penalty program for an investigation.

**IT IS, THEREFORE, ORDERED** as follows:

1. Waffle House shall provide Ms. Campbell with medical treatment for her injuries as required by Tennessee Code Annotated section 50-6-204, to be re-initiated by authorizing an MRI and any further treatment with Dr. Salyer as he deems reasonable, necessary, and related to the work injury.

2. This is not a final order.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of**

**compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

5. **This matter has been set for an initial hearing on July 8, 2015, at 10:00 a.m. (CDT). The hearing shall be conducted via teleconference. Instructions for participation are included below.**

**ISSUED AND FILED WITH THE CLERK ON THIS THE 11th DAY OF MAY, 2015.**

_____

**Joshua Davis Baker**
**Workers' Compensation Judge**

7

Initial Hearing:

An Initial Hearing has been set with Judge Joshua Davis, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial Hearing. Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 11th day of May, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|------|------|------|------|------|------|
| Employee's attorney, Charles Hicks | | | | | X | Larry_hicks@bellsouth.net |
| Employer/Carrier's attorney, Sarah Reisner | | | | | X | sreisner@manierherod.com |
| Compliance | | | | | | WCCompliance.Program@tn.gov |

_____

**Penny Patterson Shrum, Clerk**
**Tennessee Court of Workers'**
**Compensation Claims**
**WC.Court.Clerk@tn.gov**