FILED

June 7, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 11:45 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **JAMES FORIEST,** | ) | **Docket No. 2017-06-0413** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 92945-2016** |
| **UPS,** | ) | |
| **Employer.** | ) | **Judge Joshua Davis Baker** |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

This matter came before the Court on May 24, 2017, upon the Request for Expedited Hearing filed by the employee, James Foriest. The present focus of this case is Mr. Foriest's entitlement to medical treatment and temporary disability benefits. The central legal issue is whether his injury arose primarily out of and in the course and scope of his employment for UPS. While the Court holds Mr. Foriest injury occurred in the course and scope of his employment, the Court further holds that Mr. Foriest is unlikely to succeed at a hearing on the merits in proving his injury arose primarily out of his employment. Accordingly, the Court denies Mr. Foriest's request for medical treatment and temporary disability benefits at this time.

## History of Claim

Mr. Foriest claimed he dislocated his right knee patella while working as a delivery driver for UPS. His medical history revealed a prior total-knee-replacement surgery on this knee.

On October 11, 2016, Mr. Foriest, a twenty-six year employee of UPS, stopped his truck in a church parking lot to take a brief break and smoke a cigarette. Testimony at the hearing established that UPS drivers may take a total of one hour's worth of breaks during a day at any time, with the exception of the first two hours of the drivers' shifts.

In his affidavit, Mr. Foriest stated that, during his break, he "was walking a straight line after having hopped down from the UPS truck when I felt a pop in my right knee that caused me a great deal of pain." At the hearing, both Mr. Foriest and his UPS on-road supervisor, Terry Holder, who traveled with him that day, testified that they made between sixty and seventy deliveries before stopping for a break. They both stated that Mr. Foriest exited the delivery truck before he began having problems with his knee.

Despite these similarities, their testimony concerning the incident differed in several important ways.

The most important difference concerns the timing of when Mr. Foriest began having problems with his knee. Mr. Foriest testified that he "hopped" down from the rear of the truck, took one step with his left foot and then a step with his right. When he stepped with his right foot, Mr. Foriest stated he began experiencing pain. He screamed out and claimed Mr. Holder heard him screaming. He then "hopped" to the front the truck and told Mr. Holder what happened.

Mr. Holder testified that Mr. Foriest exited the truck from the passenger side. Mr. Foriest then walked around for approximately ten to fifteen minutes and smoked a cigarette before crying out in pain. Following this, Mr. Holder, who had also undergone knee replacement surgery, suggested that Mr. Foriest do some exercises to mitigate the discomfort. As the pair remained in the parking lot for the next several minutes, Mr. Foriest's knee popped several more times, and Mr. Holder noticed that Mr. Foriest's kneecap had migrated to the inside of his leg.

Despite Mr. Foriest's injured knee, he and Mr. Holder continued to deliver packages; Mr. Foriest drove, and Mr. Holder took the packages from the truck to the customer. When Mr. Foriest was unable to continue, a substitute delivery driver completed the route. Mr. Holder and Mr. Foriest then returned to the UPS headquarters in Brentwood where, according to Mr. Foriest, several coworkers helped him into his personal vehicle.

Mr. Foriest sought medical care from Dr. William Shell had performed Mr. Foriest's previous right-knee replacement surgery. When Dr. Shell saw Mr. Foriest after the October 11 incident, he recorded the following history: "States yesterday he was just walking in a straight line when his kneecap 'jumped out.' States he looked down and it moved to the inside. Felt a pop. After that had a lot of pain and swelling. Does not recall actually twisting the knee." Despite no mention of it in the recorded history, Mr. Foriest testified he told Dr. Shell he jumped or hopped down from the truck before his kneecap dislocated.

Dr. Shell diagnosed patellar dislocation and hemarthrosis, and drew a large amount of blood from Mr. Foriest's knee. Dr. Shell, however, could not explain why the incident occurred, so he took Mr. Foriest off from work completely and referred him to a practice associate, Dr. Allen Anderson, for evaluation.

When he first saw Mr. Foriest, Dr. Anderson recorded the following history: "He had a total knee replacement in 2009. He has done really well until he was at work walking, and his knee gave way." Dr. Anderson diagnosed Mr. Foriest with a rupture of

the medial patella-femoral ligament (MPFL) and knee instability. Dr. Anderson recommended and performed surgery on Mr. Foriest's knee.

Dr. Anderson made several statements regarding causation of Mr. Foriest's injury. In his treatment notes, Dr. Anderson stated Mr. Foriest's knee condition was not related to his prior knee replacement. He classified the injury as "new" and "work-related," citing Mr. Foriest's lack of knee problems since the replacement surgery in support of this opinion. In addition to the statements in the treatment notes, Dr. Anderson also completed a causation letter prepared by Mr. Foriest's attorney. In the letter, Dr. Anderson stated, Mr. Foriest suffered a new injury and that the "cause or aggravation" was at least "50%" responsible for his present need for knee surgery.

After UPS denied his claim, Mr. Foriest filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits. In his PBD under the area titled "Provide details about the work injury," he wrote the following: "I have a job which involves a great deal of walking and climbing. I have been performing his [sic] for a number of years. After getting off the truck and walking a short distance my right knee popped." In his affidavit, Mr. Foriest also noted that his job required him to "make 135 to 150 stops" every day. He stated the job required significant "stepping up and stepping down," bending and squatting, and pushing and pulling packages with the use of a dolly that could cumulatively weigh as much as 600 pounds.

**Findings of Fact and Conclusions of Law**

The Court applies the following legal principles to decide this matter. In general, Mr. Foriest bears the burden of proving all elements of his claim by a preponderance of the evidence in order to recover workers' compensation benefits. However, to prevail at an expedited hearing he need only come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-9 (Mar. 27, 2015).

In order for Mr. Foriest to be eligible for benefits, he must have suffered either an acute or a gradual injury as defined by the Workers' Compensation Law. Under the law, an "injury" means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee[.]" To constitute a claim for workers' compensation benefits, the injury, whether acute or gradual, must be caused "by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *See* Tenn. Code Ann. § 50-6-102(14) (2016).

3

Here, the parties do not dispute that Mr. Foriest injured his knee. UPS, however, disputes whether the injury arose primarily out of and in the course and scope of employment. While the Court holds Mr. Foriest was acting in the course and scope of his employment when he injured his knee, based on the evidence presented at this time, the Court holds that his injury did not arise primarily out of his employment. For that reason, the Court holds Mr. Foriest is not likely to prevail at a hearing on the merits.

*Mr. Foriest's Knee Condition Developed in the*
*Course and Scope of His Employment*

The terms "arising out of employment" and "occurring in the course and scope of employment" are not synonymous. With respect to course and scope, "[a]n injury occurs in the course of employment if 'it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.'" *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 534 (Tenn. 2006). Additionally, "[a]cts necessary to the life, comfort and convenience of an employee while at work are incidental to the employment and contribute to the furtherance of service; and injuries that occur in the performance thereof are deemed to have arisen out of the employment." *McCormick v. Aabakus, Inc.*, 101 S.W.3d 60, 63 (Tenn. Workers' Comp. Panel 2000). Furthermore:

> [E]mployees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

*Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 1992).

Mr. Foriest's knee condition developed during an employer-sanctioned break that UPS allows all drivers to take during the course of their shifts. The testimony from both Mr. Foriest and Mr. Holder established that drivers may take up to an hour of breaks each day and may take those breaks whenever and wherever they please. Additionally, both men testified they made between sixty and seventy deliveries before taking a break in the early afternoon, meaning they were well into the work day when the break occurred.

Further, none of the testimony indicated Mr. Foriest chose a particularly dangerous place to take his break or engaged in any activity during his break that would have taken him so far away from his normal job duties to constitute abandonment of those duties. All he did was walk and smoke. While the Court recognizes that most case law on this point concerns injuries that occurred on the employer's physical premises, the nature of Mr. Foriest's work required him to perform the vast majority of his work, and to

4

take any breaks allowed by UPS, while off UPS' physical premises. By taking his sanctioned break at a time convenient to Mr. Foriest and his work schedule, the Court holds his rest break fell within the course and scope of Mr. Foriest's employment with UPS.

*Mr. Foriest Did Not Establish His Knee Condition*
*Arose Primarily Out of His Employment*

Whereas the course and scope of employment generally refers to the time and place of injury, arising primarily out of employment refers to causation. An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992). Additionally, "the mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *19 (Nov. 9, 2015). Accordingly, "an injury purely coincidental, or contemporaneous, or collateral with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Id*. Furthermore, "Tennessee courts have consistently held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle or step, in addition to the injured employee's ambulation." *See Wilhelm v. Krogers*, 235 S.W.3d 122, 128-29 (Tenn. 2007).

In addition to these legal principles, the question of whether an injury arises "primarily out of the employment" is inextricably intertwined with the issue of medical causation. In all but the most simple and routine cases, an employee must prove the causal relationship between an injury and a workplace accident through expert medical proof. *See Wheetley v. State*, No. M2013-01707-WC-R3-WC, 2014 Tenn. LEXIS 476, at *5 (Tenn. Workers' Comp. Panel June 25, 2014). For the reasons provided below, and despite a doctor's opinion affirmatively linking his knee injury to his work, the Court holds Mr. Foriest failed to come forward with evidence that he would likely succeed at a hearing on the merits in proving his injury arose primarily out of his employment for UPS.

In all of his pleadings and the statements made to his physicians, Mr. Foriest alleged he suffered an injury while simply walking. His affidavit and the history recorded by Dr. Shell both state Mr. Foriest was "walking in a straight line" when his knee condition developed. Although he additionally stated he "hopped" down from the truck, neither statement indicated he developed pain immediately upon doing so.

Additionally, Mr. Foriest testified he did not slip on wet concrete or step in a hole or other obstacle.

For purposes of this expedited hearing, the above facts are crucial because an injury incurred while simply walking on level ground is not compensable. *See Wilhelm*, 235 S.W.3d at 128-29. Therefore, despite Dr. Anderson's opinion that Mr. Foriest suffered a work-related injury, the Court holds he is unlikely to prevail at a hearing on the merits in proving he suffered an acute injury to his knee that arose primarily out his work for UPS.

The Court's ruling that Mr. Foriest is unlikely to prove he suffered an acute injury does not foreclose him from proving he suffered a gradual injury. However, the medical evidence presented at this time is insufficient to support such a finding. Although Dr. Anderson causally related Mr. Foriest's knee injury to his work, the Court has no additional testimony to indicate why he did so. The causation letter simply states he suffered a new workplace injury and that "cause or aggravation" was at least "50%" responsible for his present need for knee surgery. Without further explanation, the Court finds that Dr. Anderson's blanket causation statement, which emanated from a medical history of "walking in a straight line," is insufficient to show Mr. Foriest suffered a gradual injury.

Finally, because the Court holds that Mr. Foriest is unlikely to prevail at a hearing on the merits in proving he suffered a compensable injury, it follows that he did not prove his entitlement to temporary disability benefits as temporary disability benefits are only payable for a compensable injury. *See Jones v. Crencor,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). The Court, therefore, denies Mr. Foriest's request for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Foriest's claim for medical and temporary disability benefits is denied.

2. This matter is set for a Scheduling Hearing on **July 17, 2017, at 10:30 a.m. (CDT).** The Court will convene the hearing by telephone. You must dial (615) 741-2113 or (855) 874-0474 to participate. Failure to call at the designated time may result in a determination of the issues without your participation.

6

**ENTERED ON THIS THE 7TH DAY OF JUNE, 2017.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

## **APPENDIX**

Exhibits:

1. Medical Records
2. Affidavit of James Foriest
3. 2009 Workplace Injury Documents
4. First Report of Injury
5. Wage Statement
6. Recorded Statement of James Foriest
7. Accident Summary Statement of Terry Holder

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. UPS' Position Statement
5. UPS' Opposition to Request for Expedited Hearing
6. Mr. Foriest's Statement of the Case

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the  7th  day of June, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Stephen D. Karr | | | X | steve@flexerlaw.com |
| David T. Hooper | | | X | dhooper@hooperzinn.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**