FILED

October 13, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:42 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| ROBERT KIMERY<br>**Employee,** ) | **Docket No.: 2015-08-0166** |
| v. ) | **State File No.: 91670-2014** |
| **TRILLIUM STAFFING** ) <br>**Employer,** ) | **Judge Amber E. Luttrell** |
| And ) | |
| **CORVEL ENTERPRISE COMPANY** ) <br>**Insurance Carrier.** ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS AND TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by the employee, Robert Kimery, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Mr. Kimery seeks medical benefits and temporary disability benefits for a left-knee injury. The central issue for determination is whether Mr. Kimery presented sufficient medical proof of a knee injury arising primarily out of and in the course and scope of employment. If the Court finds Mr. Kimery sustained a compensable injury, the extent of medical and temporary benefits is at issue. For the reasons set forth below, the Court finds Mr. Kimery did not carry his burden of proving entitlement to the requested benefits at this time.

## History of Claim

Mr. Kimery is a forty-one year-old resident of Tipton County, Tennessee. He worked for Trillium Staffing,[1] an industrial staffing service, as a journeyman pipefitter.

---

[1] Mr. Kimery initially testified he worked for Industrial Mechanical Contractors (IMC) in Memphis, Tennessee through Trillium Staffing. He later testified he worked for Trillium Staffing. The testimony indicates the immediate onsite supervisors were employees of Industrial Mechanical Contractors. The Court is unclear of the relationship between these two companies. However, the pleadings filed indicate the employer is Trillium Staffing, and the parties did not raise the identity of the proper employer as a disputed issue in the Dispute Certification Notice.

1

On October 22, 2014, Mr. Kimery worked a shutdown project at DuPont Protein Technologies in Memphis, Tennessee. On that date, he and a coworker, "Nathan," carried a twenty-foot long stainless steel pipe when Nathan dropped his end of the pipe, causing Mr. Kimery to fall to the ground. Mr. Kimery's hands and knees hit the floor. The onsite project manager, John Comacho, assisted Mr. Kimery off the floor. Mr. Kimery experienced difficulty walking the remainder of the day. Mr. Kimery testified he could not move the next morning; therefore, he called Mr. Comacho and advised that he would seek medical attention.

On October 23, 2014, Mr. Kimery presented to Ashley Pennington, NP at Somerville Medical Clinic. (Ex. 1 at 5.) He gave Ms. Pennington a history of falling at work, injuring his left knee. He complained it hurt to walk. He described the injury by stating his left knee twisted when he fell on it yesterday. Ms. Pennington diagnosed a left-knee sprain, prescribed medication, and recommended a splint for Mr. Kimery's knee. She advised if he did not improve, she would order an MRI of the knee. Mr. Kimery wrapped his knee with an ACE bandage and returned to work the next day. He spoke to the job supervisor and safety director for IMC, Vince Ciancioso, who advised that he could not let Mr. Kimery work without a doctor's release. The next medical record indicates Mr. Kimery had an MRI of his left knee on October 31, 2014, which revealed a medial meniscus tear. Following the MRI, Mr. Ciancioso advised Mr. Kimery to contact "Brandon" at Trillium.

Mr. Kimery contacted Brandon, the recruiter at Trillium, and reported the work injury to his knee. He informed Brandon that his supervisor would not let him return to work until a doctor released him. Trillium offered Mr. Kimery a panel of orthopedic physicians from which he selected Dr. Riley Jones. (Ex. 3.) Trillium first instructed Mr. Kimery to seek treatment at Concentra Medical Center, which evaluated him.

On November 11, 2014, the Concentra doctor diagnosed a left-knee medial meniscus tear and large joint effusion.

Mr. Kimery next presented to Dr. Jones at Memphis Orthopedic Group on November 21, 2014. Upon examination and review of the MRI results, Dr. Jones confirmed the medial meniscus tear diagnosis and scheduled outpatient surgery on December 3, 2014. Dr. Jones took Mr. Kimery off work and advised him to return for follow up after surgery.

The day prior to Mr. Kimery's surgery, the workers' compensation carrier cancelled the surgery pending further investigation of the claim. The carrier filed a Notice of Denial and Notice of Controversy on December 9, 2014, stating, "Employee did not suffer an injury compensable under the Tennessee Workers' Compensation Act." (Ex. 3.)

Trillium requested and obtained Mr. Kimery's complete records from Somerville

Medical Center, his PCP, which revealed pre-existing swelling in Mr. Kimery's left knee. The records further indicated Mr. Kimery presented to Ms. Pennington on October 4, 2013, reporting swelling and tightness in the left knee and pain in both knees. Ms. Pennington noted, "[left] knee swollen and tight, worse over last couple of days." On examination, Ms. Pennington observed, "left knee swelling, tender patellar tendon fluid pocket." Ms. Pennington diagnosed left-knee pain, left-knee swelling, and high blood pressure. On October 6, 2014, two weeks prior to his work injury, Mr. Kimery returned to Ms. Pennington reporting left-leg swelling, shortness of breath, and cough. Ms. Pennington diagnosed uncontrolled high blood pressure and left-leg swelling.

Trillium sent Ms. Pennington's records to Dr. Jones for review and requested his opinion on medical causation. By letter dated June 10, 2015, Dr. Jones opined the following:

> It is apparent that the patient has documented swelling of the left knee and pain as far back as October 6, 2014. This is two weeks prior to when he said he had his injury. As such, it appears that he had a preexisting problem which he did not relate to us. From the history, it appears he well could have had a torn meniscus that was giving him trouble prior to any injury on the job. Based on the fact that he did not inform us about this treatment I would consider it higher than a grade of 51% that this is not work related.

Mr. Kimery testified he sought treatment from Ms. Pennington on October 6, 2014, for his uncontrolled high blood pressure. His wife expressed concern that he might have a blood clot in his leg prompting him to seek medical attention. Mr. Kimery denied any prior injury to his left knee and testified he had no real issues with his knee prior to the work injury.

Following Trillium's denial of the claim, Mr. Kimery sought no further treatment for his left-knee injury and did not return to work for Trillium.[2] In late July 2015, Mr. Kimery began working for Tradesman International, another industrial staffing company, earning twenty dollars per hour as a millwright. Mr. Kimery described the job duties of a millwright as a much less physical job than the job duties of a pipefitter. Prior to working for Tradesman International, Mr. Kimery performed one small painting job for a friend from church and earned three hundred dollars.

Mr. Kimery filed a Petition for Benefit Determination on May 29, 2015, seeking medical and temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation; therefore, the Mediation Specialist filed the Dispute Certification Notice on July 21, 2015.

---

[2] The record is unclear when Mr. Kimery was separated from his employment at Trillium.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). Moreover, "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E)(2014).

The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005).[3] An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and

---

[3] "Reliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

In this case, the Court finds that Mr. Kimery appeared calm, at ease, self-assured, steady, confident, forthcoming, reasonable and honest, which characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Mr. Kimery credibly testified that he was at work on October 22, 2014, carrying a pipe with a coworker when he fell to the ground on his hands and knees, injuring his left knee. Trillium did not refute his testimony. Therefore, the injury occurred in the course of Mr. Kimery's employment.

Thus, the determinative issue becomes whether Mr. Kimery's injury arose primarily out of his employment. In support of his request for medical benefits, Mr. Kimery offered into evidence the medical records from Ms. Pennington immediately following the work injury that reflect he reported a history of a specific work injury to his left knee on October 22, 2014. However, there are additional records revealing Mr. Kimery reported symptoms in his left knee to Ms. Pennington *prior to* the work injury. Mr. Kimery saw Ms. Pennington on October 6, 2014, merely two weeks prior to his work injury, reporting swelling in his left knee. Mr. Kimery also sought treatment from Ms. Pennington as far back as October 4, 2013, *one year prior to* the work injury, complaining of pain, swelling, and tightness in his left knee.

At the hearing, Mr. Kimery denied any injury to his left knee prior to the work injury on October 22, 2014. When asked on direct examination if he had any issues with his left knee immediately prior to his work injury, Mr. Kimery responded, "not really." He testified his uncontrolled high blood pressure caused the pre-existing swelling in his knee. Although the Court finds Mr. Kimery's testimony credible, his opinion regarding the medical cause of his pre-existing knee swelling is simply unsupported by the medical proof before the Court at this time. Ms. Pennington expressed no opinion in the October 4, 2013 or October 6, 2014 records that Mr. Kimery's left-knee symptoms stemmed from his uncontrolled high blood pressure for which she also treated him. Likewise, there is no medical opinion before the Court, from Ms. Pennington or any other provider, stating that Mr. Kimery's meniscus tear in his left knee and need for surgery arose *primarily out of* his work injury on October 22, 2014.

The only medical proof before the Court addressing medical causation for Mr. Kimery's injury is from Dr. Jones, the panel-selected physician. Upon reviewing Mr.

Kimery's complete records showing his pre-existing left-knee symptoms, Dr. Jones could not opine that Mr. Kimery's work injury caused the meniscus tear. To the contrary, Dr. Jones opined:

> From the history, it appears he well could have had a torn meniscus that was giving him trouble prior to any injury on the job. Based on the fact that he did not inform us about this treatment I would consider it higher than a grade of 51% that this is not work related.

Pursuant to section 50-6-102(13)(E), Dr. Jones' opinion is afforded a presumption of correctness on the issue of medical causation that is rebuttable only by a preponderance of the evidence. The Court finds the medical proof, at this time, is insufficient to rebut the presumption of correctness afforded Dr. Jones. Accordingly, the Court finds Mr. Kimery did not come forward with sufficient medical evidence from which the Court could determine he is likely to prevail on the merits at trial.

Having found the medical proof fails to establish Mr. Kimery's left-knee meniscus tear primarily arose of his employment with Trillium, the Court further finds Mr. Kimery is not entitled to the requested temporary disability or medical benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Kimery's request for medical benefits is denied. At this time, Mr. Kimery has not come forward with sufficient medical evidence from which the Court may conclude he is likely to prevail at a hearing on the merits at trial.

2. Mr. Kimery's request for temporary disability and medical benefits is denied. At this time, Mr. Kimery has not come forward with sufficient evidence from which the Court may conclude he is likely to prevail at a hearing on the merits on this issue.

3. This matter is set for an Initial (Scheduling) Hearing on December 17, 2015, at 9:30 a.m. (CDT).

**ENTERED this the 13th day of October, 2015.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

6

<u>Initial (Scheduling) Hearing</u>:

An Initial (Scheduling) Hearing has been set with **Judge Amber E. Luttrell, Court of Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing

7

Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Medical Benefits was sent to the following recipients by the following methods of service on this the 13th day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Monica Rejaei, Esq. | | | X | mrejaei@nstlaw.com |
| David Deming, Esq. | | | X | ddeming@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8

# APPENDIX

**Exhibits:**

1. Medical records of:
   - Somerville Medical Clinic
   - Concentra
   - Outpatient Diagnostic Center of Memphis (MRI)
   - Memphis Orthopedic Group
2. Wage Statement
3. First Report of Injury, Panel of Physicians, Notice of Denial, and Notice of Controversy
4. Affidavit of Robert Kimery

**Technical Record:**[4]

1. Petition for Benefit Determination (PBD), filed May 29, 2015
2. Dispute Certification Notice (DCN), filed July 21, 2915
3. Request for Expedited Hearing (REH), filed July 21, 2015

---

[4] The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.