**FILED**

**October 28, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 9:37 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| **DARRELL MANUEL** | ) | **Docket No.: 2015-02-0108** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 11930/2015** |
| **A-1 WORKFORCE, INC.** | ) | |
| **Employer,** | ) | **Judge Brian K. Addington** |
| **And** | ) | |
| **TECHNOLOGY INSURANCE** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Darrel Manuel, on June 23, 2015. The present focus of this case is the compensability of Mr. Manuel's exposure injury. The central legal issue is whether the injury arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court finds the injury not compensable and denies the requested relief at this time.[1]

### History of Claim

Mr. Manuel is a thirty-five--year-old resident of Washington County, Tennessee. (T.R. 1 at 1.) Prior to the alleged injury addressed by this Order, Mr. Manuel presented to Johnson City Medical Center (JCMC) on December 1, 2012, for non-cardiac chest wall pain and bronchitis. (Ex. 2, JCMC records at 275.) The provider at JCMC prescribed a Z-pack and Ventolin, an inhaler. *Id.* at 277.

Mr. Manuel testified he worked as a temporary worker performing "bag-out" on an assembly line at Fiber Innovation Technology (FIT). He had previously worked at this site without any issues. Mr. Manuel returned to FIT on Thursday, February 6, 2015, and noticed his worksite contained diesel boom-trucks, which were installing electrical parts and machines. Mr. Manuel smelled diesel fumes and reported the smell and a

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

headache to A-1 Workforce, his employer. Mr. Manuel worked on February 7, 2015, without incident. The diesel trucks were not in use that day.

On February 10, 2015, Mr. Manuel went to work, and the diesel trucks were in use again. He opened a bay door of the plant for ventilation because he felt nauseous, but a FIT employee told him the door must remain closed. Mr. Manuel complained about his heart racing, so a FIT maintenance man told him where to find aspirin in the plant. Mr. Manuel took them and also ate a pack of crackers. Mr. Manuel felt worse after eating the crackers. He told Chad Defriece, a FIT employee, that he was feeling ill, and Mr. Defriece went outside with him to get some air. Mr. Manuel felt better outside.

When Mr. Manuel returned inside, his stomach started rolling and he vomited the crackers in the bathroom. Mr. Manuel started sweating, and his chest became tight. Mr. Defriece took Mr. Manuel back outside. Mr. Defriece checked Mr. Manuel's pulse, and told him it was high. Mr. Manuel requested to speak to a nurse. Mr. Defriece told his supervisor, and the supervisor asked Mr. Manuel if he needed to be examined. Mr. Manuel replied he might need to be examined elsewhere if there were no nurse on-site. Mr. Defriece's supervisor told him to call someone. Mr. Manuel called his mother-in-law, and she took him to JCMC.

When Mr. Manuel arrived at JCMC, he informed the intake worker that he suffered chest pain. *Id.* at 18. He testified he told the intake workers that he suffered diesel smoke inhalation and was rushed to an observation room. JCMC records reflect he told the admitting physician, Dr. Garik Misenar, that the chest pain started one day prior to admission would last for one to two hours before stopping and then would reoccur. *Id.* at 21. The providers noted substance abuse and possible family history of CAD as risk factors.[2] Mr. Manuel reported smoking one pack of cigarettes a day and occasional marijuana usage. *Id.*

Mr. Manuel underwent several tests on February 11, 2015, and the consulting physician, Dr. Kais Al Balbissi, decided to do a heart catheterization. *Id.* at 22. While undergoing tests, and for the entire time he was at the hospital, Mr. Manuel testified he suffered a bitter taste in his mouth, his chest was tight, and he constantly smelled diesel. Nurse records from February 11, 2015, indicate the following: 7:30 a.m. Mr. Manuel denied any needs; 10:08 a.m. he ate; 11:39 a.m. he was sitting in bed, denied any needs and had no complaints; 5:06 p.m. he had no needs and no complaints, 7:20 p.m. he was sitting in bed watching television with no needs or complaints. *Id.* at 168-9.

Dr. Al Balbissi performed the heart catheterization on February 12, 2015. The results were normal. *Id.* at 28. Dr. Al Balbissi recommended, "Aggressive risk factor modification. Imdur 15 mg po qday considering possibility of vasopastic angina (Patient

---

[2] CAD is coronary artery disease.

CP was precipitated by inhalation of fumes). Patient counseled and advised to discontinue smoking." *Id.* JCMC discharged Mr. Manuel later that day. *Id.* at 18. JCMC provided Mr. Manuel a work excuse until February 17, 2015, with work restrictions of limited use of the groin for four days and personal restrictions of no lifting over thirty-five pounds until February 15, 2015. (Ex. 6.) These restrictions came from his heart catheterization.

On February 17, 2015, Mr. Manuel and several FIT employees filled out an accident investigation form. The report noted the "sweet smell" Mr. Manuel complained about. (Ex. 5.) FIT acknowledged ventilation issues and recommended that a door be left open. *Id.*

A-1 Workforce was unable to accommodate Mr. Manuel's restrictions. It provided him a letter on February 23, 2015, stating it had no work for him until a doctor released him to full duty. (Ex. 7.)

Mr. Manuel saw Dr. Al Balbissi again on March 2, 2015. Mr. Manuel complained of chest pain. (Ex. 1, ETSU Physicians at 1.) His blood pressure was very high. Mr. Manuel reported smelling diesel and other chemical smells at work for a fracking company. *Id.* He did not want to return to work due to pain in his leg. *Id.* Dr. Al Balbissi noted, "He was started on Isosorbide for possible vasospastic angina. He is having severe HA (headache) on it." *Id.* Dr. Al Balbissi stopped the Isosorbide. *Id.* at 3. Dr. Al Balbissi's assessment was atypical chest pain, hypertension, and right-groin pain. *Id.* at 2. Dr. Al Balbissi provided Mr. Manuel a work excuse until March 16, 2015. *Id.* at 31.

On March 3, 2015, A-1 Workforce offered Mr. Manuel work he previously performed in a kitchen at a conference center. Mr. Manuel declined the offer. (Ex. 8.)

On March 18, 2015, Dr. Al Balbissi examined Mr. Manuel again. Mr. Manuel complained of leg pain. (Ex. 2, ETSU Physicians at 55.) Dr. Al Balbissi noted prescription medication had helped Mr. Manuel's chest pain. *Id.* Mr. Manuel reported only suffering chest pain when he was anxious. *Id.* Dr. Al Balbissi's assessment was hypertension and atypical chest pain. *Id.* at 57.

On April 1, 2015, Dr. Al Balbissi re-examined Mr. Manuel. Dr. Al Balbissi noted, "Mr. Manuel is a 34 year old male who recently underwent a heart cath that showed no CAD and possible vasospastic angina related to inhalation of fumes." *Id.* at 47. Mr. Manuel continued to complain of right-leg pain. *Id.* Dr. Al Balbissi's assessment was hypertension and right-leg pain. *Id.* at 49.

Dr. Thomas Perry examined Mr. Manuel at the request of Dr. Al Balbissi. Mr. Manuel's history to Dr. Perry included exposure to carbon monoxide via diesel fumes at

3

work. (Ex. 2, Tri-State Mtn. Neurology at 3.) Dr. Perry examined Mr. Manuel's leg and recommended an EMG. *Id.* at 4. On April 15, 2015, Dr. Perry issued a letter stating that Mr. Manuel should refrain from any heavy lifting or vigorous activity for four to six months. *Id.* at 1. Mr. Manuel provided the note to A-1 Workforce.

Dr. Terry noted Mr. Manuel suffered a possible traumatic nerve injury to his femoral nerve when he examined him again on June 22, 2015. *Id.* at 2. Dr. Terry scheduled a return appointment for October 21, 2015. *Id.*

On June 23, 2015, Dr. Hal Roseman, a cardiologist, issued a report following a record review. (Ex. 2, Roseman at 1.) Dr. Roseman noted that the JCMC medical records indicated Mr. Manuel's chest pain started one day prior to admission. *Id.* at 2. Dr. Roseman opined Mr. Manuel's expose to fumes may not have been the source of the symptoms that caused the hospitalization if he experienced chest pain the day prior. *Id.* at 5. He opined that the exposure to fumes would be unlikely to have caused a cardiac syndrome, and that Mr. Manuel's chest discomfort was atypical for coronary syndrome. *Id.* at 5-6. Dr. Roseman opined there was no causal relationship between Mr. Manuel's exposure to diesel exhaust fumes and his subsequent cardiac treatment. *Id.* at 9.

Mr. Manuel testified he has not worked since February 10, 2015. Mr. Manuel's average weekly wage was $227.73 with a corresponding compensation rate of $151.82. (Ex. 3.) Mr. Manuel testified he placed the medical treatment on his personal insurance.

Mr. Manuel filed a Petition for Benefit Determination seeking medical and temporary disability benefits. (T.R. 1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 2.) Mr. Manuel filed a Request for Expedited Hearing. (T.R. 3.) This Court heard the matter on October 15, 2016.

Mr. Manuel asserted he needed to go to the doctor on February 10, 2015, because he never suffered such symptoms before, and he believes his symptoms are related to the diesel fumes he smelled at work. He asked the Court to order payment of his medical bills and temporary disability benefits for the time he missed work.

A-1 Workforce asserted that Dr. Roseman found no connection between Mr. Manuel's work and the treatment he received. Mr. Manuel did not receive authorized care, but sought emergency care because he thought his symptoms were related to his work. He has, however, presented insufficient evidence to prove a causal relationship. A-1 Workforce asked the Court to deny Mr. Manuel's request for medical and temporary disability benefits.

4

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the Workers' Compensation Law, an injury, including an occupational disease of the heart and lungs, must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). Arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d 690, 692 (Tenn. 1997); *Hosford v. Red Rover Preschool,* No. 2014-05-0002, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *20 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2014). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.,* 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, the element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992).

Mr. Manuel asserted that he suffered an injury from smelling fumes, but he presented no proof of causation. At most, Dr. Al Balbissi noted Mr. Manuel possibly suffered angina and added, in parentheses, that fume inhalation "precipitated" his chest pain. Dr. Al Balbissi later noted Mr. Manuel suffered atypical chest pain and hypertension. He did not causally relate these conditions to Mr. Manuel's work.

Dr. Roseman noted Mr. Manuel reported during intake that his chest pain started the day prior to February 10, 2015. Mr. Manuel testified he meant that his chest pain

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

5

started on Thursday, February 6, 2015, but he provided conflicting testimony on this issue. He testified he only experienced a headache February 6 and was fine the next day at work.

The medical notes further conflict with Mr. Manuel's testimony, as they reflect he told Dr. Misenar that his chest hurt for a few hours would stop and then start again. This is inconsistent with Mr. Manuel's testimony that he was fine until he smelled the fumes on February 10, 2015, and then rushed to the hospital for emergency care because his chest hurt.

The medical notes at JCMC make no mention of the inhalation of fumes during February 10-11, 2015. It was only after the normal heart catheterization on February 12, 2015, that Dr. Al Balbissi mentioned fume inhalation. The Court finds it implausible that Mr. Manuel would rush to an emergency room with complaints of chest pain associated with fume inhalation and there be no mention of fume inhalation in the medical records from the first two days of his hospital stage. Rather, the record reflects Mr. Manuel rushed to the hospital and complained of chest pain that he said had started the day prior.

In addition, Mr. Manuel testified he suffered a bitter taste in his mouth, chest tightness, and constantly smelled diesel while in the hospital. He also testified he felt worse at the hospital. Yet, the nursing records of October 11, 2015, indicate he had no complaints or needs.

Dr. Al Balbissi did not make a definitive causation statement. He only stated that Mr. Manuel possibly suffered angina. This does not meet the statutory definition of an injury arising primarily out of and in the course and scope of employment.

Mr. Manuel felt ill at work, but the Court finds, however, that he failed to prove a causal relationship between his symptoms and his work.

The Court finds that Mr. Manuel has not proven he suffered a compensable work injury. Therefore, he has not come forward with sufficient evidence from which this Court can conclude that he is likely to prevail at a hearing on the merits. His request for medical and temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Manuel's claim against A-1 Workforce, Inc. for temporary disability and medical benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on November 18, 2015, at

6

2:00 p.m. Eastern time.

**ENTERED this the 28th day of October, 2015.**

Judge Brian K. Addington
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call 865-594-6538 or toll-free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note:** You must call in on the scheduled date/time to participate. **Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

7

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit: Mr. Manuel
2. Collective Medical Records
3. Wage Statement
4. First Reports of Injury
5. Accident Investigation Form
6. Return to Work Slip
7. Employer's Notice of no work for Mr. Manuel
8. Employer Email concerning Mr. Manuel's work status

Technical record:[4]
1. Petition for Benefit Determination, April 30, 2015
2. Dispute Certification Notice, June 22, 2015
3. Request for Expedited Hearing, June 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 28th day of October, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email/Mail Address |
|---|---|---|---|---|---|---|
| **Darrell Manuel** | X | X | | | | **204 West Chilhowie Ave. Johnson City, TN 37604** |
| **E. Harrison, Esq.** | | | | | X | **eharrison@wimberlylawson.com** |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.