

FILED

January 29, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:22 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| Paula Dugger, | ) | **DOCKET No.: 2015-05-0341** |
|     Employee, | ) | |
| **v.** | ) | **STATE FILE No.: 69225-2015** |
| Home Health Care of Middle TN, | ) | |
|     Employer, | ) | **Judge Dale Tipps** |
| And | ) | |
| United Heartland, | ) | |
|     Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the undersigned workers' compensation judge on January 19, 2016, on the Request for Expedited Hearing filed by the employee, Paula Dugger, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Ms. Dugger is entitled to medical and temporary disability benefits. The central legal issue is whether the evidence is sufficient for the Court to determine that Ms. Dugger is likely to establish at a hearing on the merits she suffered an injury arising primarily out of and in the course and scope of her employment. For the reasons set forth below, the Court finds Ms. Dugger is not entitled to the requested medical and temporary disability benefits at this time.[1]

## History of Claim

Ms. Dugger is a forty-nine-year-old resident of Lawrence County, Tennessee. She testified she worked as a Licensed Practical Nurse for Home Health Care of Middle Tennessee, LLC (HHC) beginning in May 2013. On February 21, 2015, Ms. Dugger was driving from her home to her assigned patient's home in Rockvale, Tennessee. The roads were icy and Ms. Dugger decided to return home instead of trying to drive the approximately eighty miles to the patient's home. She stopped at a store to call HHC and let them know she was not going to make it to the appointment. On her way home, another vehicle struck Ms. Dugger's car, causing several injuries.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

Ms. Dugger completed an HHC Employment Application on May 31, 2013. One of the paragraphs Ms. Dugger was required to initial stated:

> If the position applied for requires driving in the course of work, I understand that I will be required to possess a current and valid driver's license and understand that I will be required to provide proof of insurance. I also understand that any offer employment is contingent on my ability to be covered by auto insurance, and have proof of $100,000.00/$300,000.00 liability coverage required for my position.

(Ex. 5.) Ms. Dugger testified the position for which she applied required driving in the course of work. As a result, she increased her insurance coverage to the required limits.

Ms. Dugger executed a Comprehensive Agreement when HHC hired her. That agreement provided in part:

> All Company employees whose job may involve driving on Company business must maintain a current driver's license and automobile liability insurance providing minimum limits. Employees who use their personal automobile in carrying out their job responsibilities (i.e., travel to and from patient visits and other related work) must furnish the Company evidence of automobile insurance and must carry a minimum of $100,000.00/$300,000.00 liability coverage for bodily injury.

*Id*. Ms. Dugger testified her job required her to travel to and from patient visits daily. She maintained the required $100,000.00/$300,000.00 liability coverage and provided evidence of that coverage to HHC.

Ms. Dugger testified HHC provided her with a written job description when it hired her. The "essential functions" section of the job description includes the requirement: "Is available and makes prn and routine patient visits when indicated and as requested. Is available and rotates on-call assignments when requested." (Ex. 4.)

Ms. Dugger testified she made prn patient visits on a couple of occasions, such as collecting a blood sample and then taking it to the hospital for lab work. She also occasionally received calls from HHC while she was on assignment, asking her to go to an unscheduled assignment. HHC did not normally pay Ms. Dugger for mileage, but she received mileage reimbursement for two assignments that involved longer trips.

When she was hired, Ms. Dugger also received a copy of the Employee Handbook. Section 10.00 of the handbook provides:

2

All employees whose position may require them to provide patient/client care are required to furnish their own transportation. Automobiles must be kept in good running order and must be kept clean and neat, whenever possible. It is the responsibility of each employee to provide his or her own dependable transportation and to routinely work outside the office on a regular and timely manner.

(Ex. 3.)

Ms. Dugger's Performance Appraisal of September 8, 2014, included a section titled, "Job Responsibility #8." It states: "Is available and makes prn and routine patient visits when indicated and as requested. Is available and rotates on-call assignments when requested." HHC rated Ms. Dugger "satisfactory" on this responsibility. (Ex. 5.) She testified she frequently accepted prn assignments when HHC asked her to cover for another employee or work on her day off.

Ms. Dugger testified on cross-examination that, at the time of the accident, and for several months prior, HHC assigned her to work twelve-hour shifts for the same HHC patient in Rockvale. During that period, HHC did not reimburse her for mileage or pay for any vehicle maintenance or insurance. She received no compensation for her travel time, and her shift began when she arrived at the patient's home. She was following her regular route to Rockvale when she decided to return home.

Ms. Dugger filed a Petition for Benefit Determination seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Ms. Dugger filed a Request for Expedited Hearing, and this Court heard the matter on January 19, 2016. Prior to the hearing, the parties submitted a joint stipulation that Ms. Dugger incurred an unspecified amount of medical expenses and loss of income as a result of her February 21, 2015 automobile accident. The parties therefore agreed the only issue to be determined at this time is whether Ms. Dugger's accident arose primarily out of and in course of her employment.

At the Expedited Hearing, Ms. Dugger argued that travel was an integral part of her employment responsibilities, as evidenced by HHC's requirements that she have and maintain a car and remain on call for HHC to reassign her to a different location at any time. Further, she contended travel was an integral part of the employment contract. Thus, she asserted the coming and going rule does not preclude compensability in this case.

HHC countered that the appropriate inquiry is whether, *on the day of the accident*, Ms. Dugger was in the course and scope of her employment while she traveled to her

3

home because of the weather. She was not on a special errand on the day of the accident, she received no mileage or expense reimbursement, and she received no compensation for her travel time. Therefore, no exception to the coming and going rule applies.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). In general, an employee bears the burden of proof on all prima facie elements of his or her workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence, but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). Injury is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* As the Workers' Compensation Appeals Board noted:

> The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690,

4

692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992).

*Johnson v. Wal-Mart Associates, Inc.*, No. 2014-06-0069, 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *11-12 (Tenn. Workers' Comp. App. Bd. July 2, 2015).

Generally, injuries sustained by an employee while traveling to or from work are not considered within the course of employment unless they occur on the employer's premises. *Howard v. Cornerstone Med. Assoc., P.C.*, 54 S.W.3d 238, 240 (Tenn. 2001). "The reason supporting this rule is evident: travel to and from work is not, ordinarily, a risk of employment. Rather, driving to work falls into the group of all those things a worker must do in preparation for the work day, such as dressing; and driving from work is often a prerequisite to getting home." *Id*. at 241.

There are exceptions to this general rule. Under the special errand exception, an employee may be entitled to compensation for injuries sustained while performing some special act, assignment, or mission at the direction of the employer. *Id*. at 240. "The reason for this exception is that 'the employment imposes the duty upon the employee to go from place to place at the will of the employer in the performance of duty and the risks of travel are directly incident to the employment itself.'" *Id*. at 241. Injuries sustained by employees traveling in a company car while going to and from work are also compensable. *Id*. The Supreme Court has also held that an employee's need to carry his own carpentry tools in his truck, combined with a provision for travel reimbursement in the employment contract, removed his case from the general rule. *Id*. at 241. Compensation has been found where the journey itself "is a substantial part of the services for which the workman was employed and compensated." *Pool v. Metric Constructors, Inc.*, 681 S.W.2d 543, 544 (Tenn. 1984).

The Court finds that Ms. Dugger's accident did not occur within any of the above-enumerated exceptions. She was not on a special errand or assignment at the time of her accident, but was merely driving home from work. She was not travelling in a company car, nor was she paid for her travel time or reimbursed for her mileage expense.

Another exception is the traveling employee, working away from the regular jobsite. *Howard*, 54 S.W.3d at 241. This exception "is generally applied to employees who travel extensively to further the employer's business, such as traveling salesmen. The travel is an integral part of the job and differs from an ordinary commuter's travel, thereby exposing the traveling employee to greater risks." *Id*.

5

Ms. Dugger contended she falls into the traveling employee exception because she did not have a fixed place of work and was required to travel to assigned patient homes. This contention is unpersuasive. In *Sharp v. Northwestern Nat'l Ins. Co.*, 654 S.W.2d 391 (Tenn. 1983), the Supreme Court held that an employee who was on call at all times and traveled to different job sites could not recover workers' compensation benefits for an injury resulting from an automobile accident while driving home from work.

> The reason supporting this rule is evident: travel to and from work is not, ordinarily, a risk of employment. Rather, driving to work falls into the group of all those things a worker must do in preparation for the work day, such as dressing; and driving home from work is often a prerequisite to getting home. While this travel is some modicum of benefit to the employer, travel to and from work is primarily for the benefit of the employee: if he doesn't present himself at the work place, he is not compensated for his labors.

*Id*. at 392.

The Court went on to distinguish cases in which an employee may recover for an injury sustained while traveling for work:

> These cases have in common the element of an undefinable boundary for the beginning and ending of the claimant's work environment. The very nature of the employments rendered that environment amorphous. And yet, it is certain the claimants were placed in circumstances which were directly related to their employment. And, therefore, injuries arising out of those circumstances were compensable.

*Id*.

The Supreme Court considered facts similar to Ms. Dugger's claim in *Howard v. Cornerstone Med. Assocs., P.C.*, 54 S.W.3d 238 (Tenn. 2001). *Howard* involved a doctor who sustained injuries in an automobile accident. Dr. Howard's employment contract required him to see patients at several facilities and hospitals. At the time of the accident, he was driving his personal automobile to a nursing home that had called him to see a new patient. Even accepting Dr. Howard's claim that his salary included travel expenses, the Court found he did not fall under the "traveling employee" exception. Instead, the Court found his travel "was incidental at best, that his work boundaries were definable, and that his employment placed him at no greater risk than any other motorist on the highway." *Id*. at 241.

The Court finds that Ms. Dugger was not a travelling employee. Even though she had to travel to her job, the travel itself was not a substantial part of her employment. *See*

6

*Smith v. Royal Globe Ins. Co.*, 551 S.W.2d 679, 681 (Tenn. 1977)(employee, in reality, was simply a commuter, even though the distance involved was substantial, and the situs of his duties changed from time to time).

In the alternative, Ms. Dugger also claimed another exception to the rule. She contended the distinguishing factor in her case was that her provision and maintenance of a vehicle to do the job was a condition of her employment with HHC. The benefit to HHC was the ability of HHC to call and direct Ms. Dugger to additional prn or on-call assignments. Ms. Dugger cited *Hollin v. Johnston County Council on Aging*, 639 S.E.2d 78, 84-85 (N.C. Ct. App. 2007), which held:

> Where an employee who is required to furnish their own vehicle as part of their employment is injured going to or coming from work, such injuries are covered by the Workers' Compensation Act. (Citation omitted). Plaintiff here was required to furnish her own vehicle for her employer's use in providing in-home care to patients. "[D]elivering nursing services to patients at their homes is the *raison d'etre* of [defendant's] business, and . . . traveling to patients' homes is an essential component of that service." (citation omitted). Plaintiff was traveling to her first patient's home at the time she sustained her injuries. She was required to travel there in her own vehicle, and so was "required by the very nature of her job description to submit herself to the hazards of day-to-day travel . . . back and forth to the homes of her patients." *Id.* Unlike the public at large, who may choose their mode of transportation, plaintiff was required to use her private vehicle as part of her employment. "As such, [plaintiff] was acting within the course of her employment with [defendant] at the time her injuries were sustained."

All the cases cited by Ms. Dugger, including *Hollin*, are from foreign jurisdictions. Ms. Dugger provided no legal authority demonstrating the exception described in *Hollin* exists in Tennessee.[2] Further, a careful review of Tennessee case law by the Court reveals no such exception. Creating a new exception to the coming and going rule is the province of the appellate courts. To the extent Ms. Dugger suggests this Court carve out a new exception, the Court declines to do so.

Therefore, as a matter of law, Ms. Dugger has not come forward with sufficient evidence from which this can Court conclude she is likely to prevail at a hearing on the

---

[2] It is noteworthy that the court in *Hollin* based its decision at least in part on a requirement that the North Carolina Workers' Compensation Act should be liberally construed and that "[w]here any reasonable relationship to employment exists, or employment is a contributory cause, the court is justified in upholding the award as arising out of employment." *Hollin*, 639 S.E.2d at 84. This is inconsistent with the mandate of Tennessee Code Annotated section 50-6-116 (2015) that the Workers' Compensation Law "shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer."

merits. Her requests for medical and temporary disability benefits are denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Dugger's claim against HHC and its workers' compensation carrier for the requested medical and temporary disability benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on March 30, 2016, at 9:00 a.m. Central Time.

   **ENTERED this the 29ᵗʰ day of January, 2016.**

   _____
   **Judge Dale Tipps**
   **Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **<u>filing fee in the amount of $75.00.</u>** Within ten calendar days after the filing of a notice of appeal, payment

must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Paula Dugger
2. Second Affidavit of Paula Dugger
3. HHC Employee Handbook
4. LPN Job Description
5. Paula Dugger's Personnel file

Technical record:[3]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Stipulation of Parties

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 29th day of January, 2016.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Richard Matthews | | X | Rmatthews95@aol.com |
| Gordon Aulgur | | X | Gordon.aulgur@accidentfund.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**