FILED

March 28, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:14 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| Shawn Sirkin,<br>　　　　　Employee,<br>v.<br>Trans Carriers, Inc.,<br>　　　　　Employer,<br>And<br>Great American Insurance Co.,<br>　　　　　Insurance Carrier. | Docket No.:　2015-08-0292<br><br>State File No.: 44984-2015<br><br>Judge: Jim Umsted |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on March 16, 2016, upon the Request for Expedited Hearing filed by the employee, Shawn Sirkin, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether the employer, Trans Carriers, Inc., must provide medical and temporary disability benefits for Ms. Sirkin's alleged work-related right-shoulder injury. For the reasons set forth below, the Court finds Ms. Sirkin is entitled to a panel of physicians.[1]

### History of Claim

Ms. Sirkin is a fifty-five-year-old Florida resident. Trans Carriers hired her as a truck driver on or about October 13, 2014. She claimed she injured her right shoulder on May 20, 2015, after slipping on a wet step while climbing out of her truck. Trans Carriers denied the claim on June 24, 2015, arguing the alleged injury did not arise primarily out of and in the course and scope of Ms. Sirkin's employment.

To understand the parties' dispute, some background information is necessary. After completing a run on May 14, 2015, Ms. Sirkin took some personal time off. On May 18, 2015, the day she was scheduled to return to work, Ms. Sirkin contacted her dispatcher, Jennifer Mohundro, to request an additional day off. The next day, on May 19, 2015, Ms. Sirkin once again contacted Ms. Mohundro through text messages to request off until May 20, 2015. In response to this new request, Ms. Mohundro texted,

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

1

"You pushed out your [practical time of availability] yesterday now you are doing it again. You had a good preplan. I'll push it out until you let me know you are coming back[.]" Ms. Sirkin and Ms. Mohundro also discussed issues with Ms. Sirkin's truck in these texts. Ms. Sirkin advised, "my APU is shutdown [sic] and won't start[.] I called weekend dispatch and he told me to call 800 service when I'm ready to go. The batteries are dead." Ms. Mohundro responded, "Why not have it fixed while you are off son [sic] you will be ready to go."

According to Ms. Sirkin, she called Trans Carriers on May 20, 2015, but could not get in touch with Ms. Mohundro to discuss the load Ms. Mohundro had mentioned in her text from the day before. Consequently, she went to her truck to check her Qualcomm[2] system to see if she had an assigned load. Qualcomm did not show an assigned load for Ms. Sirkin at that time. After checking Qualcomm, Ms. Sirkin alleges she slipped while getting out of her truck, resulting in the injury to her right shoulder.

Ms. Sirkin testified she spoke to a co-worker, Teresa Talley, after injuring her shoulder. Ms. Sirkin indicated she discussed her shoulder injury with Ms. Talley, and the discussion prompted her to report her injury to Ms. Mohundro. She texted Ms. Mohundro at 6:50 a.m. on May 20, 2015, stating, "I was getting out the [sic] and slipped and fell[.] I am going to urgent care[.]"

Medical records entered into evidence revealed Ms. Sirkin treated with Dr. Arshad Husain at Northwest Ohio Urgent Care. In an office note dated June 3, 2015, Dr. Husain indicated Ms. Sirkin "injured her right shoulder at work when climbing up into her semi truck." He noted Ms. Sirkin "slipped and held on to the handle." Dr. Husain diagnosed Ms. Sirkin with a right shoulder sprain and ordered physical therapy and an MRI. On June 3, and June 17, 2015, he restricted Ms. Sirkin from driving a semi. Dr. Husain did not address causation. However, a Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form was entered into evidence, which indicated Dr. Anthony Ngo of HealthNow Family and Urgent Care could not determine whether Ms. Sirkin's right shoulder pain was related to work.

During the Expedited Hearing, Ms. Sirkin testified she went to her truck on the morning of May 20, 2015, for two reasons: (1) to see if she had a pre-plan waiting to be accepted; and (2) to get the truck's battery jumped per Ms. Mohundro's text message of May 19, 2015. Ms. Sirkin indicated a driver could only accept a pre-plan using the Qualcomm system. She stated she slipped while getting out of her truck after checking Qualcomm and felt a pop in her shoulder when she fell. She also testified she had experienced previous problems with her right shoulder while working on April 14, 2015, and May 13, 2015, and indicated that the May 20, 2015 incident was the "final straw that broke the camel's back." According to Ms. Sirkin, she reported her injury to Ms.

---

[2] Qualcomm is a messaging system that allows trucking companies to send and receive messages with the driver.

Mohundro on May 20, 2015, via text message and wrote a message to dispatch on Qualcomm the next day, stating she would return after she had her shoulder examined. She also testified she forwarded her medical records to Kathy Ward in human resources via email on May 27, 2015. However, she never received a panel or any authorized treatment from Trans Carriers. Moreover, on June 1, 2015, Trans Carriers terminated her employment, claiming she was a "no call no show." She just recently went back to work for a different trucking company. She has continued to have pain in her right shoulder and seeks continued medical treatment, payment of past medical expenses, and temporary disability benefits for the period she has been unable to work due to her injury. She asks the Court to leave out weeks from January 3, 2015, to April 9, 2015, when calculating her average weekly wage, as she was out on medical leave and then on a leave of absence after her daughter's death during that period.

Ms. Mohundro and Ms. Ward both testified on behalf of Trans Carriers at the hearing. Both stated Ms. Sirkin was not scheduled to work on May 20, 2015, and had no reason to be in her truck on that date. They also testified she did not report a work injury.

Ms. Mohundro further stated Ms. Sirkin did not have a pre-plan on May 20, 2015, because Ms. Mohundro had pushed Ms. Sirkin's practical time of availability out until she verified she was ready to return to work. According to Ms. Mohundro, Ms. Sirkin had to provide Ms. Ward with a specific date and time of return to get back on the active driving roster. However, Ms. Sirkin never told anyone at Trans Carriers she was ready to come back. Ms. Mohundro also testified Ms. Sirkin should have been able to speak to a dispatcher on May 20, 2015, because a dispatcher's line will ring to another dispatcher rather than going to voicemail. In addition, Ms. Mohundro testified it was possible to accept a pre-plan by text rather than through Qualcomm.

Ms. Ward testified Ms. Sirkin was not on a leave of absence on May 20, 2015, but was on "home time." As such, she simply had to contact her dispatcher to get back on the schedule. According to Ms. Ward, she tried contacting Ms. Sirkin multiple times by telephone and email between May 27, 2015, and May 29, 2015, but never heard back from her. Consequently, Ms. Sirkin's employment was terminated as of May 29, 2015, based on company policy requiring termination after three days of no call no show. Ms. Ward further indicated Ms. Sirkin's wage statement included a per diem amount that should not be calculated into her gross wages for purposes of figuring her average weekly wage and compensation rate.

### Findings of Fact and Conclusions of Law

In reaching a conclusion in this case the Court relies on the following legal principles. In general, Ms. Sirkin bears the burden of proof on all prima facie elements of her workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd.

3

LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). At this expedited hearing, Ms. Sirkin need not prove every element of her claim by a preponderance of the evidence, but must come forward with sufficient evidence from which the Court can determine that the she is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard does not relieve Ms. Sirkin of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment, but allows some relief to be granted if that evidence does not rise to the level of a "preponderance of the evidence." *See Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

Thus, to be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). Injury is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* As the Workers' Compensation Appeals Board noted:

> The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

*Johnson v. Wal-Mart Associates, Inc.*, No. 2014-06-0069, 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *11-12 (Tenn. Workers' Comp. App. Bd. July 2, 2015).

In this case, the Court finds Ms. Sirkin presented as a reasonable and honest witness. The Court finds her to be credible and finds her account of the May 20, 2015 incident believable. As such, the Court finds Ms. Sirkin's right-shoulder injury occurred

4

when she slipped and fell while leaving the truck while completing a work-related action of checking the Qualcomm on the truck. The Court finds Ms. Sirkin's injury arose primarily out of and in the course and scope of the employment as required by Tennessee Code Annotated section 50-6-102(14) (2015).

Ms. Sirkin seeks medical care for her right shoulder. While she presented no medical proof her fall from the truck caused her right-shoulder injury, the law does not require her to present proof of medical causation to obtain medical care at an Expedited Hearing. *See McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9. She only must prove she is likely to prevail at a hearing on the merits concerning her entitlement to medical treatment. Tenn. Code Ann. § 50-6-239(d)(1) (2015). The Court finds she carried this burden. Accordingly, the Court finds Trans Carriers must provide medical benefits in the form of a panel of physicians from which Ms. Sirkin may select an authorized physician to provide treatment for any injuries arising primarily out of the May 20, 2015 work accident. *See* Tenn. Code Ann. § 50-6-207(a)(3)(A)(i) (2015).

Ms. Sirkin also seeks reimbursement for past medical expenses and temporary disability benefits. These benefits may be payable to any employee who suffers a compensable workplace injury. *See Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978) (An employee is entitled to receive temporary total disability benefits pursuant to Tennessee Code Annotated section 50-6-207(1) whenever the employee has suffered a compensable, work-related injury that has rendered the employee unable to work.). The Court finds that Ms. Sirkin has presented insufficient evidence to justify an award for past medical expenses and temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Trans Carriers or its workers' compensation carrier shall provide a panel of physicians so Ms. Sirkin can select an authorized physician to provide treatment for any injuries arising primarily out of the May 20, 2015 work accident as required by Tennessee Code Annotated section 50-6-204 (2015).

2. This matter is set for a Status Hearing on May 30, 2016, at 10:00 a.m. Central time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 28th day of March, 2016.**

**Judge Jim Umsted**
**Court of Workers' Compensation Claims**

Status Conference:

An Status Conference has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll-free at 866-943-0014 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavits of Shawn Sirkin;
2. Affidavit of Jennifer Mohundro;
3. Affidavit of Teresa Talley;
4. Affidavit of Kathy Ward;
5. Form C-23 Notice of Denial of Claim for Compensation;
6. Form C-41 Wage Statement;
7. Text messages between Ms. Sirkin and her driver manager, Ms. Mohundro;
8. Documentation from Ohio Bureau of Workers' Compensation;
9. Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form;
10. Driver History Report;
11. Trans Carriers' Communication Log;
12. DAC Report (marked for identification only);
13. Qualcomm information (marked for identification only);
14. Healthline.com information (marked for identification only);
15. Screenshot of Qualcomm screen (marked for identification only);
16a. Northwest Ohio Urgent Care physical therapy note, dated June 8, 2015 (marked for identification only);
16b. Northwest Ohio Urgent Care medical record, dated June 17, 2015;
16c. Prescription from Northwest Ohio Urgent Care, dated June 17, 2015 (Northwest Ohio Urgent Care);
16d. Northwest Ohio Urgent Care physical therapy daily patient note, dated June 10, 2015, through June 17, 2015 (marked for identification only);
16e. Northwest Ohio Urgent Care fax cover sheet, dated June 23, 2015 (marked for identification only);
16f. Northwest Ohio Urgent Care Physical Therapy Appointment Reminder, dated June 3, 2015;
16g. Northwest Ohio Urgent Care Physical Therapy Evaluation, dated June 8, 2015 (marked for identification only);
16h. BWC – North medical record, dated May 28, 2015 (marked for identification only);
16i. BWC – North medical record, dated June 3, 2015;
16j. HealthNow Family and Urgent Care prescription for shoulder x-rays, dated February 29, 2016 (marked for identification only);
16k. HealthNow Family and Urgent Care prescription for Ultram, dated February 29, 2016 (marked for identification only);
16l. HealthNow Family and Urgent Care receipt, dated February 29, 2016 (marked for identification only);
16m. MRI report, dated September 24, 2015 (marked for identification only);
16n. Toledo Hospital Consent for Treatment, dated May 24, 2015 (marked for

identification only);

16o. Toledo Hospital Patient Financial Responsibility – Workers' Compensation, dated May 24, 2015 (marked for identification only);

16p. Benore Urgent Care medical record, dated June 17, 2015;

17. Additional partial medical records (marked for identification only);

18. First Report of an Injury, Occupational Disease or Death from Ohio Bureau of Workers' Compensation;

19. Northwest Ohio Urgent Care Health History, dated May 28, 2015; and

20. Ms. Sirkin's Payroll History Report.

Technical record:

1. Petition for Benefit Determination;
2. Dispute Certification Notice, filed on September 1, 2015;
3. Request for Expedited Hearing;
4. Trans Carriers' position statement of August 24, 2015;
5. Trans Carriers' Expedited Hearing Brief;
6. Order Denying Ms. Sirkin's Request for Expedited Hearing;
7. Order Denying Trans Carriers' Motion to Dismiss and Granting an Evidentiary Expedited Hearing; and
8. Order Denying Ms. Sirkin's Motion Requesting Expedited Hearing to be Conducted Telephonically or by Review of the Documents Submitted.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 28th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Shawn Sirkin, Employee | | | x | shawns1960@yahoo.com |
| B. Duane Willis, Employer's Attorney | | | x | dwillis@morganakins.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov